IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KEVIN KENNA WOODS,                          3:11-CV-01082-BR

      Plaintiff,

                               OPINION AND ORDER

v.

PATROL OFFICER VICTOR
GUTIERREZ, an individual; and
CITY OF HERMISTON, a
municipal corporation,

      Defendants.


THOMAS FREEDMAN, JR.
Pearl Law LLC
312 N.W. Tenth Avenue, Suite 201
Portland, OR 97209
(503) 467-7257

      Attorneys for Plaintiff

STEVEN A. KRAEMER
LESLIE ANNE EDENHOFER
Hart Wagner, LLP
1000 S.W. Broadway
Suite 2000
Portland, OR 97205
(503) 222-4499

      Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion (#34) for Summary Judgment.  For the reasons that follow, the Court **GRANTS** Defendants' Motion.


<u>BACKGROUND</u>

The following facts are undisputed unless otherwise noted:

On August 31, 2010, Umatilla County Circuit Court Judge Jeffrey McCall entered a Stalking Protective Order against Plaintiff Kevin Kenna Woods that prohibited Plaintiff from "intentionally, knowingly or recklessly having contact . . . with:  Mary Sue Edes, Erline Owen, and Rina Henderson."  The Stalking Protective Order prohibited Plaintiff from, among other things, "[c]oming into the immediate visual or physical presence of [Edes, Owen, or Henderson] within 250 feet" and from being closer than 50 feet from Edes, Owen, or Henderson except when Plaintiff visited his parents' residence.  The Stalking Protective Order allowed Plaintiff to have contact with Henderson "for the purposes of parenting time and custody as ordered by the Court."  Plaintiff, however, was not visiting his parents' residence nor taking part in parenting time or custody at the time of the events at issue.

On November 26, 2010, Judge McCall entered an Amended Stalking Protective Order, which continued to prohibit Plaintiff

from "intentionally, knowingly or recklessly having contact . . .
with:  Mary Sue Edes, Erline Owen, and Rina Henderson."  The
Amended Stalking Protective Order also continued to prohibit
Plaintiff from, among other things, "[c]oming into the immediate
visual or physical  presence of [Edes, Owen, or Henderson] within
250 feet except that when visiting his parents [*sic*] residence
. . . he may be no closer than 50 feet."  The Amended Stalking
Protective Order was effective "until further order of the
court."  The Amended Stalking Protective Order was effective at
all times relevant to the events at issue.

On February 11, 2011, at 2:18 p.m., Erline Owen called 911
and (1) advised the operator that she was protected by a Stalking
Protective Order that prohibited Plaintiff from being within 250
feet of her; (2) stated she was at 1210 Eleventh Street, Space
No. 32 in Hermiston, and had been babysitting her grandchild
since 7:45 that morning; (3) advised the operator that Plaintiff
was across the street in Space No. 10,[1] which was closer than 250
feet from her; and (4) stated she believed Plaintiff knew she was
across the street because she thought Plaintiff had seen her
while she was on the front porch and Plaintiff also knew what her
vehicle looked like.

Defendant Officer Victor Gutierrez was dispatched to respond

_____

[1] It is undisputed that Plaintiff arrived at the location
several hours after Owen.

3 - OPINION AND ORDER

to Owen's call.  Officer Gutierrez arrived at 1210 Eleventh
Street at 2:30 p.m. in response to the call.  Officer Gutierrez
contacted Plaintiff on arriving.  The parties' accounts differ as
to the initial meeting.  Plaintiff testified at deposition that
he was in his car driving out of the trailer park and was stopped
at a stop sign when Officer Gutierrez turned into the park and
asked Plaintiff to turn around and come back to speak with him.
Plaintiff agreed and drove back to the trailer park to talk with
Officer Gutierrez.  Officer Gutierrez testified at deposition
that Plaintiff was sitting in his vehicle "trying to exit the
vehicle and go inside his house [at the trailer park] when I
pulled up."  Decl. of Leslie Edenhofer, Ex. 2 at 3.

    Officer Gutierrez advised Plaintiff that Officer Gutierrez
was at the park to investigate a stalking complaint.  Officer
Gutierrez testified at deposition that Plaintiff told Officer
Gutierrez that he knew Owen's vehicle had been at Space 32 all
day on February 11, 2011.  Plaintiff, however, testified at
deposition that although he knew it was Owen's van, "they all
drive it."  Plaintiff was surprised at the accusation that he was
violating the Stalking Protective Order because he had been at
his "home and residence, which was private property," and he
advised Officer Gutierrez that he did not believe he had "done
anything wrong or violated the Stalking Order."  Decl. of Kevin
Woods at ¶ 8.  Plaintiff, however, testified at deposition that

4 - OPINION AND ORDER

he knew the Stalking Protective Orders did not contain any
exception for Plaintiff being at his residence.  Woods Dep. at
103-04.  Officer Gutierrez noted in his arrest report and
testified at deposition that after Plaintiff advised Officer
Gutierrez that he did not believe he had done anything wrong,
Plaintiff "decided to walk away."  Gutierrez Dep. at 19.  Officer
Gutierrez told Plaintiff to wait in his squad car.  Woods Decl.
at ¶ 9.  Plaintiff complied with Officer Gutierrez's directive.

    Officer Gutierrez then contacted Owen at Space 32.  Owen
answered the door and talked with Officer Gutierrez on the porch.
Owen and Officer Gutierrez testify in their Declarations that
Owen showed Officer Gutierrez a copy of the Amended Stalking
Protective Order, Owen told Officer Gutierrez that she was afraid
of Plaintiff, and Owen began to shake while she talked with
Officer Gutierrez about Plaintiff.  Owen told Officer Gutierrez
that Plaintiff had been parked in front of Space 32 and had made
eye contact with Owen, at which point she had decided to call
911.

    After speaking with Owen, Officer Gutierrez called dispatch
and confirmed the Amended Stalking Protective Order was valid.
Officer Gutierrez then returned to the squad car and advised
Plaintiff that he was under arrest for violating the Amended
Stalking Protective Order.  Plaintiff testified Officer Gutierrez
told him that he had violated the Amended Stalking Protective

Order by coming into visual contact with Owen, at which point
Plaintiff told Officer Gutierrez that he had not seen Owen; he
was unaware she was at the trailer park; and even though
Plaintiff had seen Owen's van earlier, he knew numerous people
drove that vehicle.  Woods Decl. at ¶¶ 11-12.

Plaintiff testified at deposition that Officer Gutierrez
told Plaintiff to place his hands behind his back to be
handcuffed.  Plaintiff asked Officer Gutierrez if he could use
two sets of handcuffs "'cause I got short arms and I'm pretty
big."  Woods Dep. at 124.  Officer Gutierrez agreed and used two
sets of handcuffs on Plaintiff during the ten-minute drive to the
Hermiston Police Department.[2]  Woods Dep. at 124.

Plaintiff testified at deposition that Plaintiff did not "at
any time state that [he] had any injuries to [his wrists" before
Officer Gutierrez placed the two sets of handcuffs on Plaintiff.
Woods Dep. at 127.  Plaintiff also testified at deposition that
Plaintiff thinks he said "ow" one time when Officer Gutierrez
initially put the handcuffs on because one of the handcuffs
"pinched real tight for a second or two."  After Plaintiff said
"ow," Officer Gutierrez "got it loose real quick."  Woods Dep. at
130-31.  Woods testified he did not have any complaints about his

---

[2] Although Officer Gutierrez testified at deposition that
Plaintiff did not ask for two sets of handcuffs, it is undisputed
that Officer Gutierrez used two sets of handcuffs on Plaintiff
during the drive to the Hermiston Police Department.

handcuffs and did not make any complaints that his wrists were
bothering him during the ten-minute ride to the Hermiston Police
Department.  Woods Dep. at 130.  It is general Hermiston Police
Department policy and procedure to handcuff individuals with
their hands behind them during transport.

Officer Gutierrez removed Plaintiff's handcuffs and placed
him in a holding cell at the Hermiston Police Department.
Plaintiff was in the holding cell for approximately 30 minutes
while Officer Gutierrez prepared a probable-cause affidavit.
Plaintiff testified at deposition that he could not recall if he
complained to Officer Gutierrez about his wrists hurting during
any of their conversations while Plaintiff was in the holding
cell.  Woods Dep. at 134.

Officer Gutierrez advised Plaintiff after 30 minutes that he
was going to take Plaintiff to Umatilla County Jail.  Plaintiff
testified at deposition that he showed Officer Gutierrez a scar
from "an old injury" and asked if Officer Gutierrez could put the
cuffs on in front because they "were pinching my wrist."  Woods
Dep. at 135.  Plaintiff testified he only showed Officer
Gutierrez the scar and did not advise Officer Gutierrez that he
had undergone carpal-tunnel surgery.  According to Plaintiff,
Officer Gutierrez refused to handcuff Plaintiff in front because
it was "standard procedure" to put handcuffs on an individual
with his hands behind him.  Woods Dep. at 136.  Officer

Gutierrez, however, testified at deposition that Plaintiff did
not ask to be handcuffed in front at any time.  Gutierrez Dep. at
45.

Officer Gutierrez placed handcuffs on Plaintiff again for
the 30-minute drive to the Umatilla County Jail.  Plaintiff
testified at deposition that he did not know whether Officer
Gutierrez used two sets of handcuffs, but he thought Officer
Gutierrez might only have used one set because the handcuffs felt
tighter than they had on the ride to the Hermiston Police
Department.  Woods Dep. at 138.  Officer Gutierrez, however,
testified he used two sets of handcuffs because Plaintiff "is a
very large person.  His shoulders are wide[, and Plaintiff] was
cooperative that day."  Gutierrez Dep. at 52-53.

Plaintiff and Officer Gutierrez both testified at deposition
that Plaintiff did not complain about pain when Officer Gutierrez
placed the handcuffs on him for the ride to Umatilla County Jail
or at any other time during the ride to the jail.  Plaintiff
testified at deposition that when they arrived at the Umatilla
County Jail and were exiting the police vehicle, his wrists were
"really hurting" and he could not feel his thumb.  Plaintiff also
testified he advised Officer Gutierrez at that point that his
wrists hurt, and Officer Gutierrez advised him that he would be
able to see a doctor or nurse at the jail.  Officer Gutierrez,
however, testified at deposition that when he turned Plaintiff

over to deputies at the Umatilla County Jail, Plaintiff "mentioned something about the handcuffs, but [Officer Gutierrez] wasn't close enough to hear."  Gutierrez Dep. at 54.

On September 9, 2011, Plaintiff filed a Complaint in this Court in which he brought claims under § 1983 against (1) Officer Gutierrez for excessive force in violation of Plaintiff's rights under the Fourth Amendment; (2) Officer Gutierrez and Sergeant Wright for unlawful seizure in violation of Plaintiff's rights under the Fourth Amendment; (3) Officer Gutierrez and Sergeant Wright for violation of Plaintiff's rights to substantive due process under the Fourteenth Amendment; and (4) against Officer Gutierrez and Sergeant Wright for violation of Plaintiff's rights to procedural due process under the Fourteenth Amendment.  Plaintiff also brought claims against the City of Hermiston under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in addition to state-law claims for false arrest, assault and battery, and negligence.

On January 9, 2012, the parties filed a Stipulated Notice of Voluntary Dismissal as to Sergeant Wright.

On January 9, 2012, Plaintiff also filed an Amended Complaint in which he brought claims for (1) excessive force in violation of Plaintiff's rights under the Fourth Amendment against Officer Gutierrez, (2) assault and battery against the City of Hermiston, (3) negligence against the City of Hermiston,

9 - OPINION AND ORDER

and (4) a *Monell* claim against the City of Hermiston.

On February 6, 2012, Plaintiff filed a Second Amended Complaint in which he brings claims against Officer Gutierrez under § 1983 for (1) excessive force in violation of Plaintiff's rights under the Fourth Amendment and (2) unlawful seizure in violation of Plaintiff's rights under the Fourth Amendment in addition to state-law claims against the City of Hermiston for (1) false arrest, (2) assault and battery, and (3) negligence. Plaintiff seeks economic, noneconomic, and punitive damages as well as attorneys' fees and costs.

On May 4, 2012, Defendants filed a Motion for Summary Judgment as to all of Plaintiff's claims.  On September 27, 2012, the Court heard oral argument on Defendants' Motion and directed the parties to file supplemental briefing.  The Court took the matter under advisement on October 25, 2012.

## STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a genuine dispute as to a material fact. *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1223 (9th Cir. 2012).  In response to a properly

10 - OPINION AND ORDER

supported motion for summary judgment, the nonmoving party must
go beyond the pleadings and point to "specific facts
demonstrating the existence of genuine issues for trial." *In re
Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)
"This burden is not a light one. . . .  The non-moving party must
do more than show there is some 'metaphysical doubt' as to the
material facts at issue." *Id*. (citation omitted).

A dispute as to a material fact is genuine "if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d
1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all
reasonable inferences in favor of the nonmoving party. *Sluimer
v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary
judgment cannot be granted where contrary inferences may be drawn
from the evidence as to material issues." *Easter v. Am. W. Fin.*,
381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts
Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598
(9th Cir. 1982)).

"A non-movant's bald assertions or a mere scintilla of
evidence in his favor are both insufficient to withstand summary
judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir.
2009)(citation omitted).  When the nonmoving party's claims are
factually implausible, that party must "come forward with more

persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.


**DISCUSSION**

**I.   Plaintiff's claim for unlawful seizure in violation of the Fourth Amendment.**

Plaintiff alleges in his Second Amended Complaint that Office Gutierrez "falsely arrested plaintiff without probable cause" in violation of Plaintiff's rights under the Fourth Amendment.

**A.   The Law**

Under the Fourth Amendment "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.  "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes

those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)(citations omitted).

A warrantless arrest is lawful only if there is "probable cause to believe that the arrestee has committed, or is committing, an offense." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1207 n.7 (9th Cir. 2008).  A police officer has probable cause to arrest a person without a warrant if, under, the totality of the circumstances known to arresting officers, there exists a "fair probability" that the person has committed a crime.  *Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012). *See also Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006).

Oregon Revised Statute § 163.750(1) provides in pertinent part:

> (1) A person commits the crime of violating a court's stalking protective order when:
>
>> (a) The person has been served with a court's stalking protective order as provided in ORS 30.866 or 163.738[3] or if further service was waived under ORS 163.741 because the person appeared before the court;
>>
>> (b) The person, subsequent to the service of the order, has engaged intentionally, knowingly or recklessly in conduct prohibited by the order.

Oregon Revised Statute § 133.310(3) provides:

---

[3] Plaintiff does not contend he was improperly served with either Stalking Protective Order.

13 – OPINION AND ORDER

> (3) A peace officer *shall* arrest and *take into custody* a person without a warrant when the peace officer has probable cause to believe that:
>
> > (a) There exists an order issued pursuant to ORS 30.866, 107.095 (1)(c) or (d), 107.716, 107.718, 124.015, 124.020, 163.738 or 419B.845 restraining the person;
> >
> > (b) A true copy of the order and proof of service on the person has been filed as required in ORS 107.720, 124.030, 163.741 or 419B.845; and
> >
> > (c) The person to be arrested has violated the terms of that order.

Emphasis added.  Accordingly, if there was a fair probability that Plaintiff had violated the Stalking Protective Orders under the totality of the circumstances, Officer Gutierrez was required under Oregon law to arrest Plaintiff and to take him into custody.

## B.  Analysis

Plaintiff contends there is a genuine dispute of material fact as to whether Officer Gutierrez had probable cause to arrest him because Plaintiff alleges he did not come into visual contact with Owen.  As Defendants note, however, the Stalking Protective Orders not only prohibited Plaintiff from having visual contact with Owen, but also prohibited Plaintiff from "intentionally, knowingly or recklessly" being within 250 feet of the physical presence of Owen.

It is undisputed that at the time of the events in

14 - OPINION AND ORDER

question Plaintiff was within 250 feet of Owen and that Plaintiff knew Owen's vehicle was at Space #32 even though Plaintiff testified he believes Owen shares the vehicle with others.  It is also undisputed that Owen told both the 911 operator and Officer Gutierrez that Plaintiff had made visual contact with her and knew she was at the trailer park.  Although Plaintiff asserts he did not make visual contact with Owen, there is, nevertheless, a fair probability that Plaintiff had made visual contact with Owen and/or knew he was within 250 feet of Owen.

Plaintiff, however, contends the fact that Officer Gutierrez failed to interview any other witnesses also negates the existence of probable cause.  Plaintiff relies on *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001), to support the proposition that officers may not solely rely on the claim of a citizen witness that she has been the victim of a crime to establish probable cause and must independently investigate the basis of the witness's knowledge or interview other witnesses.  *Arpin*, however, is distinguishable from this case.

The ruling in *Arpin* was issued on a motion to dismiss. The Ninth Circuit held only that the plaintiff "adequately state[d] a claim . . . for violation of [her] Fourth Amendment right to be free from unlawful seizure of her person." *Id*. at 924.  The court concluded the facts as alleged by the plaintiff

"raise[d] an inference that Officers Stone and Barnes arrested
[the plaintiff] based on [a third party's] unexamined charge."
*Id*.  The court specifically noted "evidence outside the complaint
indicates Officers Stone and Barnes interviewed additional
witnesses," but concluded "such extraneous evidence should not be
considered in ruling on a motion to dismiss."  *Id.*  More
importantly, even though the court, relying on *Fuller v. M.G.
Jewelry*, stated at the beginning of its analysis that when
"establishing probable cause, officers may not solely rely on the
claim of a citizen witness that he was a victim of a crime, but
must independently investigate the basis of the witness'
knowledge or interview other witnesses," neither the court in
*Fuller* nor in *Arpin* found that to be true as a general rule in
every case.

        In *Fuller* the court granted the officer defendants'
motion for summary judgment on the issue of unreasonable seizure
in violation of the Fourth Amendment:

> We agree . . . that the general proposition that
> private citizen witnesses or crime victims are
> presumed reliable does not dispense with the
> requirement that the informant . . . furnish
> underlying facts sufficiently detailed to cause a
> reasonable person to believe a crime had been
> committed and the named suspect was the
> perpetrator.

950 F.2d 1437, 1444 (9th Cir. 1991)(quotation omitted).  The
court noted the officers in that case did not rely solely on the
uncorroborated testimony of a citizen witness before arresting

16 - OPINION AND ORDER

the plaintiffs for theft of a ring:  The officers also questioned
another store employee, the plaintiffs, and witnesses who
allegedly saw one of the plaintiffs attempting to vomit in the
bathroom when the plaintiffs were being pursued by the owner of
the jewelry store.  *Id*.  Here, however, even though Officer
Gutierrez did not question other witnesses, he also did not rely
solely on the statement of Owen.  Officer Gutierrez reviewed a
copy of the Amended Stalking Protective Order, confirmed the
Order was still valid, noted Plaintiff's location in relation to
the location of Owen (*i.e.* closer than 250 feet), and learned
from Plaintiff that he was familiar with Owen's vehicle and saw
it was parked in Space #32.  In addition, there is not any
indication in the record that Owen was not trustworthy, that Owen
was mistaken as to Plaintiff's identity, or that Plaintiff had
any reason not to be concerned that he might be within 250 feet
of Owen.

On these facts the Court concludes Plaintiff has not
established any issue of material fact as to whether there were
"underlying facts sufficiently detailed to cause a reasonable
person to believe a crime had been committed and the named
suspect was the perpetrator" or established that Officer
Gutierrez did not have probable cause to believe that Plaintiff
had violated the Stalking Protective Orders as a matter of law.

Accordingly, the Court grants Defendants' Motion for

17 - OPINION AND ORDER

Summary Judgment as to Plaintiff's claim under § 1983 for unreasonable seizure in violation of Plaintiff's rights under the Fourth Amendment.

## II. Plaintiff's state-law claim for false arrest.

As noted, Plaintiff also brings a state-law claim for false arrest against the City of Hermiston.

### A.   The Law

Under Oregon law "[t]he elements of false arrest are: '(1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful.'" *Denucci v. Henningsen,* 248 Or. App. 59, 67 (2012)(quoting *Hiber v. Creditors Coll. Serv. Of Lincoln County, Inc.,* 154 Or. App. 408, 413 (1998)).

Probable cause is a complete defense to a state-law claim for false arrest. *See, e.g., Smith v. Almada*, 640 F.3d 931, 944 (9th Cir. 2011)("like false arrest claims, probable cause is an absolute defense to malicious prosecution.").

Under Oregon law an officer has probable cause if "there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." *State v. Makuch*, 340 Or. 658 (2006) (citing Or. Rev. Stat. § 131.005(11)).

**B.    Analysis**

Only the fourth element of Plaintiff's false-arrest claim is at issue here.  Because the Court already has concluded Officer Gutierrez had probable cause to arrest Plaintiff, the Court also grants Defendants' Motion for Summary Judgment as to Plaintiff's state-law claim against the City of Hermiston for false arrest.

**III. Plaintiff's claim of excessive force in violation of the Fourth Amendment.**

In his Second Amended Complaint Plaintiff alleges "Defendant Gutierrez's conduct under the circumstances was an excessive use of force, and reasonable police officers in defendant Gutierrez's position would not have used such force."  Second Am. Compl. at ¶ 17.  At oral argument Plaintiff made clear that his excessive-force claim arises solely from Officer Gutierrez's use of handcuffs on Plaintiff during the ride to the Hermiston Police Department and during the ride to the Umatilla County Jail.

**A.    The Law**

In *Graham v. Connor* the Supreme Court held the Fourth Amendment sets the standard to apply in the context of an excessive-force claim that arises during an arrest or investigatory stop:

> [A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its "reasonableness" standard,

> rather than under a "substantive due process"
> approach.  Because the Fourth Amendment provides
> an explicit textual source of constitutional
> protection against this sort of physically
> intrusive governmental conduct, that Amendment,
> not the more generalized notion of "substantive
> due process," must be the guide for analyzing
> these claims.

490 U.S. 386, 394 (1989)(emphasis in original).  *See also Chavez*

*v. Martinez*, 538 U.S. 760, 773 n.5 (2003)("*Graham* . . . held that

[claims involving the use of excessive force in effecting an

arrest] are governed solely by the Fourth Amendment's

prohibitions against 'unreasonable' seizures, because the Fourth

Amendment provided the explicit source of constitutional

protection against such conduct.").

> When effecting an arrest, the Fourth Amendment
> requires that officers use only such force as is
> "objectively reasonable" under the circumstances.
> *Jackson v. Cty. of Bremerton*, 268 F.3d 646, 651
> (9th Cir. 2001).  To determine whether the force
> used was reasonable, we must balance "the nature
> and quality of the intrusion on the
> individual's Fourth Amendment interest against the counter-
> vailing governmental interests at stake." *Graham
> v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104
> L. Ed.2d 443 (1989)(internal quotation marks
> omitted).  Furthermore, the reasonableness must be
> judged from the perspective of a reasonable
> officer on the scene and allow for the fact that
> officers often have to make split-second decisions
> under evolving and uncertain circumstances.
> *Jackson*, 268 F.3d at 651.

*Acosta v. City of Costa Mesa*, 694 F.3d 960, 982 (9th Cir. 2012).

To determine the reasonableness of the use of force,

the court first

> must assess the severity of the intrusion on the

20 - OPINION AND ORDER

> individual's Fourth Amendment rights by evaluating
> the type and amount of force inflicted.  Second,
> we evaluate the government's interest in the use
> of force.  Finally, we balance the gravity of the
> intrusion on the individual against the
> government's need for that intrusion.

*Glenn v. Wash. County*, 673 F.3d 864, 871 (9th Cir. 2011)

(citations and quotations omitted).

**B.    Type and Degree of Force Used**

Police officers "are not required to use the least

intrusive degree of force possible," but only must act within a

reasonable range of conduct.  *Marquez v. City of Phoenix*, 693

F.3d 1167, 1174 (9th Cir. 2012)(quotation omitted).

Plaintiff relies on a number of cases to support his

contention that here the handcuffing constituted excessive force.

Those cases, however, are distinguishable.  For example,

Plaintiff relies on *Palmer v, Sanderson*, 9 F.3d 1433 (9th Cir.

1993), in which the Ninth Circuit concluded the defendant

officers were not entitled to qualified immunity on the issue of

excessive force when they handcuffed the plaintiff so tightly

that he suffered bruises and they refused to loosen the handcuffs

when the plaintiff complained about pain.  *Id*. at 1436.

Similarly, in *Alexander v. County of Los Angeles*, 64 F.3d 1315

(9th Cir. 1995), the Ninth Circuit concluded it could not say as

a matter of law that the defendant officers' use of force was

reasonable (although it deemed the issue to be "close") when the

defendant officers handcuffed a dialysis patient who advised them

21 – OPINION AND ORDER

that he was ill and on dialysis. *Id*. at 1322.  Although the
plaintiff in *Alexander* repeatedly asked the officers to remove or
to loosen his handcuffs because the plaintiff was a dialysis
patient, the defendant officers refused to loosen the plaintiff's
handcuffs for 35-40 minutes and only did so after the plaintiff's
hand became swollen and turned blue. *Id*. at 1322-23.  In
*Meredith v. Erath*, 342 F.3d 1057 (9th Cir. 2004), the court found
the use of force was unreasonable when the defendant officer
"forcibly threw [the plaintiff] to the ground, and, twisting her
arms, handcuffed her." *Id*. at 1061.  In *LaLonde v. County of
Riverside*, 204 F.3d 947 (9th Cir. 2000), the defendant officers
handcuffed the plaintiff tightly and refused to loosen the
handcuffs even after the plaintiff complained they were cutting
off the circulation to his hands and prohibiting him from wiping
pepper spray out of his eyes. *Id*. at 950.

        "The issue of tight handcuffing is usually
fact-specific and is likely to turn on the credibility of the
witnesses." *LaLonde*, 204 F.3d at 960.  Here, however, the facts
are largely undisputed:  Officer Gutierrez placed Plaintiff in
handcuffs twice (first on the ten-minute ride to the Hermiston
Police Station and second on the 30-minute ride to the Umatilla
County Jail);  Officer Gutierrez used two sets of handcuffs and
loosened the handcuffs "real quick" when Plaintiff said "ow" on
the first ride; Officer Gutierrez testified he used two sets of

22 - OPINION AND ORDER

cuffs on the second 30-minute ride to the Umatilla County Jail
(as noted, Plaintiff testified at deposition that he did not know
whether Officer Gutierrez used two sets of handcuffs).  It is
also undisputed that after Officer Gutierrez loosened the
handcuffs during the first ride to the Hermiston Police Station,
Plaintiff did not make any further complaint about pain during
that ride or during his 30-minute stay in the holding cell.
Although Plaintiff testified at deposition that he complained to
Officer Gutierrez about pain from the handcuffs when they were
arriving at the Umatilla County Jail, it is undisputed that
Plaintiff did not complain about pain from the handcuffs during
the 30-minute ride to the jail.  Thus, these facts do not support
an inference that Officer Gutierrez was aware that the handcuffs
were causing Plaintiff pain and refused to loosen or to remove
them like the officers in *Alexander* and *LaLonde.*

        Plaintiff also points to medical records as to his
wrist to support his claim for excessive force.  The first record
dated February 13, 2011, notes Plaintiff was complaining about
right-wrist pain after being handcuffed.  The record reflects on
examination that Plaintiff had "R wrist minimal abrasions, full
ROM."  Decl. of Kevin Woods, Ex. A.  This record, however, does
not indicate Plaintiff suffered the level or severity of injury
resulting from handcuffing that the Ninth Circuit found to be
excessive force in *Alexander, Meredith,* or *LaLonde.*  The second

record is dated July 8, 2011, and contains the results of a
nerve-conduction study in which Plaintiff was found to be
suffering from carpal- tunnel syndrome "moderate to severe" on
the left and "moderate" on the right.  The record, however,
reflects Plaintiff had undergone surgery for carpal-tunnel
syndrome well before the events in question, and there is not any
indication in the nerve-conduction study or in the record that
the handcuffing was the source of any increase in the severity of
Plaintiff's condition.  Moreover, Plaintiff has not established
Officer Gutierrez had any reason to believe that the handcuffs
were injuring or exacerbating any injury of Plaintiff after
Officer Gutierrez immediately responded to Plaintiff's complaint
and corrected the brief pinching of Plaintiff's wrist by the
handcuffs.  As noted, Plaintiff testified at deposition and in
his Declaration that he did not complain about pain until the end
of the second drive when they arrived at the Umatilla County
Jail.

       On this record, and viewing the facts and inferences in
the light most favorable to Plaintiff, the Court concludes
Plaintiff has not established that either the type or degree of
force used in either handcuffing was objectively unreasonable.

       **C.    Strength of Government Interest**

              The strength of the government's interest in the
              force used is evaluated by examining three primary
              factors:  (1) "whether the suspect poses an
              immediate threat to the safety of the officers or

others," (2) "the severity of the crime at issue,"
and (3) "whether he is actively resisting arrest
or attempting to evade arrest by flight." *Graham*,
490 U.S. at 396, 109 S. Ct. 1865.  These factors,
however, are not exclusive. *See Bryan v.
MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).  We
"examine the totality of the circumstances and
consider 'whatever specific factors may be
appropriate in a particular case, whether or not
listed in *Graham*.'"  *Id.* (quoting *Franklin v.
Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)).

*Glenn*, 673 F.3d at 872.

It is undisputed that Plaintiff was not actively
resisting arrest or attempting to evade arrest.  Defendants also
do not contend Plaintiff was posing an immediate threat to the
safety of Officer Gutierrez.  As noted, however, Oregon law
requires police officers to arrest and to take into custody
immediately individuals who knowingly, intentionally, or
recklessly violate stalking or restraining orders.  In addition,
police procedure generally requires individuals to be handcuffed
when being transported barring certain exceptions such as
pregnancy.  The Oregon Legislature's decision to require
individuals who have violated stalking or restraining orders to
be arrested immediately indicates the Oregon Legislature
considers violation of a stalking order to be a relatively severe
crime.

D.   **Balancing**

Balancing the relative severity of Plaintiff's crime as
determined by the Oregon Legislature and the fact that the force

25 - OPINION AND ORDER

used was relatively unobtrusive, the Court concludes no reasonable juror could find the use and/or manner of use of the handcuffs in these circumstances constituted excessive force. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim under § 1983 for excessive force.

**IV.  Plaintiff's claims for assault and battery.**

In his Second Amended Complaint Plaintiff alleges:

> Defendant Gutierrez engaged in an intentional attempt to do violence to the person of plaintiff, coupled with the present ability to carry the intention into effect.
>
> Defendant Gutierrez engaged in voluntary acts that caused intentionally harmful and offensive contact with plaintiff, including forcibly and roughly handcuffing plaintiff, which caused bruising, welts, and permanent nerve damage to plaintiff's wrists and hands.

At ¶¶ 24-25.

**A.  Standards**

Under Oregon law, civil assault occurs when (1) a person commits an act intending to cause a harmful or offensive contact with the person of another or to cause a belief by the other person that a harmful or offensive contact may immediately occur and (2) the other person reasonably believes such contact is likely to occur immediately. *See generally Mays v. Huling Buick Co.*, 246 Or. 203, 204 (1967).

Oregon courts have defined "battery" as an intentional tort

26 - OPINION AND ORDER

that "is a 'voluntary act that is intended to cause the resulting
harmful or offensive contact.'"  *Ballard v. City of Albany*, 221
Or. App. 630, 640-41 (2008)(quoting *Walthers v. Gossett*, 148 Or.
App. 548, 552, (1997)).

   **B.   Analysis**

        Defendants assert Oregon Revised Statute § 161.235(1),
in combination with the decision in *Gigler v. City of Klamath
Falls*, 21 Or. App. 753, 763 (1975), defeats Plaintiff's claims
for assault and battery under the circumstances here.   The Court
agrees.

        Oregon Revised Statute § 161.235(1) provides:

> [A] peace officer is justified in using physical
> force upon another person only when and to the
> extent that the peace officer reasonably believes
> it necessary:  (1) To make an arrest or to prevent
> the escape from custody of an arrested person
> unless the peace officer knows that the arrest is
> unlawful.

In *Gigler* the Oregon Court of Appeals held when the "physical
violence exerted by the officers against [the] plaintiff was no
more than necessary to accomplish the legitimate purpose of
fulfilling their duty," the force was reasonable and the officers
did not commit assault or battery.  21 Or. App. at 763.

        Here because the Court already has concluded the force
used against Plaintiff was not excessive and, therefore, was not
any more force than was necessary under the circumstances, the
Court also concludes pursuant to *Gigler* that Defendants are

entitled to summary judgment as to Plaintiff's claims for assault and battery.  Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claims for assault and battery.

**V.  Plaintiff's negligence claim**.

Plaintiff alleges Officer Gutierrez was negligent in "arresting, handcuffing, and incarcerating plaintiff without probable cause" and in using "unnecessary and excessive force in handcuffing plaintiff."  Plaintiff's negligence claim, therefore, rests on the same set of facts as his § 1983 claims.  As Defendants note, however, intentional conduct does not support a claim for negligence under Oregon law.  *See, e.g., Kasnick v. Cooke*, 116 Or. App. 580, 583 (1992) ("[P]laintiff may not allege facts that necessarily would constitute an intentional tort but then assert that he can prevail by proving only negligence.").

In addition, courts in this District have held that at later stages of litigation "a state common-law claim of negligence may be maintained separately from a § 1983 claim only when the negligence claim is based on facts that are different from the facts on which the § 1983 claims are based." *Whitfield v. Tri-Metropolitan Transp. Dist*., No. 06-1655-HA, 2009 WL 839484, at *11 (D. Or. Mar. 30, 2009).  In *Whitfield* the court granted the defendant's motion for summary judgment as to the plaintiff's negligence claim that was based on the same operative facts as

28 - OPINION AND ORDER

his claims under § 1983.  Similarly, the court in its findings of
fact and conclusions of law in *Saberi v. City of Portland* found
for the defendant as to the plaintiff's negligence claim:

> Here, the negligence claim is based on the same
> operative facts as the § 1983 claim.  It is
> therefore not a proper basis for a separate
> negligence claim.  Nor can assault and battery,
> which are intentional, form the basis for a
> negligence claim.  *See Denton v. Arnstein*, 197 Or.
> 28, 45, 250 P.2d 407, 415 (1952).  Plaintiff does
> not allege . . . any separate evidence that would
> support a finding of some sort of . . . negligence
> by the City. . . .  I therefore find for the City
> and against plaintiff on the negligence claim.

No. CV 04-1396-MO, 2006 WL 2707995, at *4 (D. Or. Sept. 18,
2006).  *See also Shilo v. City of Portland*, Civ. No. 04-130-AS,
2005 WL 3157563, at *1 (D. Or. Nov. 22, 2005)("[A] plaintiff may
allege negligence as a basis for recovery separate from § 1983
for acts arising in the Fourth Amendment search and seizure
context.  The negligence claim, however, should not be founded on
the same facts that give rise to the § 1983 claim.")(citing *Lewis
v. City of St. Petersburg*, 260 F.3d 1260, 1263 (11th Cir. 2001)).

Plaintiff asserts he has pled negligence in the alternative,
which is permitted under Federal Rule of Civil Procedure 8(d)(2).
Plaintiff relies on *Rodriguez v. City of Portland*, No. 09-850-KI,
2009 WL 3518004 (D. Or. Oct. 21, 2009), to support his assertion.
The court's ruling in *Rodriguez*, however, arose on a motion to
dismiss.  The court noted the holding in *Whitfield* and
specifically pointed out that the "standard does not apply at the

initial pleading stage."  The court also stated:  "[A]t the
*initial* pleading stage a plaintiff may base claims of negligence
under state law and claims of constitutional violations under 42
U.S.C. § 1983 on the same facts."  *Id.*, at *2 (emphasis added).
The court did not have before it the question as to whether a
negligence claim based on the same facts as a claim under § 1983
could be maintained at summary judgment.  The *Kasnick* and
*Whitfield* cases both indicate Plaintiff's claim for negligence,
which is based on the same conduct as his claims under § 1983 for
violation of his rights under the Fourth Amendment, cannot be
maintained at summary judgment.  In fact, Plaintiff does not
allege any facts or point to any evidence to support his claim
for negligence that differ from the facts and evidence supporting
his claims under § 1983.

    In addition, under Oregon law "[a] person is negligent if
the person fails to exercise reasonable care, a standard that 'is
measured by what a reasonable person of ordinary prudence would
. . . do in the same or similar circumstances.'"  *Bjorndal v.*
*Weitman*, 344 Or. 470, 479 (2008)(quoting *Woolston v. Wells*, 297
Or. 548, 557 (1984)).  *See also Kirby v. Sonville*, 286 Or. 339,
345 n.1 (1979)("The standard of care is 'reasonable care' or that
care which persons of ordinary prudence exercise in all of their
activities in order to avoid injury to others (or themselves for
that matter.").  Plaintiff does not offer any evidence such as

expert testimony from which a rational juror could conclude Officer Gutierrez did not act as a reasonable police officer of ordinary prudence under all of the circumstances.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's negligence claim.


<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS** Defendants' Motion (#34) for Summary Judgment and **DISMISSES** this matter **with prejudice.**

IT IS SO ORDERED.

DATED this 12th day of December, 2012.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge


31 - OPINION AND ORDER